BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: Cymbalta Products Liability Litigation          MDL Docket No. 2662

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION PURSUANT TO 28
U.S.C. § 1407 TO TRANSFER RELATED ACTIONS FOR COORDINATED
PRETRIAL PROCEEDINGS IN THE SOUTHERN DISTRICT OF INDIANA

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ........................................................................................................ 4

  A.  Lilly's Claim That Centralization Is "Even Less Appropriate Now" Is Without Merit Because Significant Changes In Circumstances Have Occurred Since This Panel Issued Its December 10, 2014 Order Denying Transfer. .................................................................................................. 4

    a.  The Procedural Posture Of The Actions Is No Longer Varied Because By The Time this Panel Hears This Petition, All Of The Earlier Filed Actions Will Have Been Completed. ..................................... 4

    b.  Informal Coordination Of Common Discovery In The Remaining Actions Has Been Difficult And Is Growing More And More Disjointed And Fractured. ................................................................. 6

    c.  The Number Of Federal Actions Has Grown to 43, The Number Of Individual Plaintiffs Has Grown To 249, The Number Of Federal Jurisdictions With Actions Pending Has Grown To 28, The Number Of Plaintiffs' Firms Has Grown To Eight, And A Judicial Council Coordinated Proceeding Involving Over 100 State Court Plaintiffs Has Been Established In California. ........................................... 7

  B.  Lilly's Claim That Centralization Would Not Further The Goals Of 28 U.S.C. § 1407 Is Without Merit Because The Panel Has Held That Centralization Is Necessary For Litigation Involving A Drug Manufacturer's Failure To Warn Physicians And Numerous Consumer Victims. ................................................................................................... 10

III. CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Carnes v. Eli Lilly and Company*
  Action No. CA 0:13-591-CMC, 2013 WL 6622915 (D.S.C. Dec. 16, 2013) .......................... 8

*Herrera v. Eli Lilly & Co.*
  No. 2:13-CV-02702-SVW, 2015 WL 4064639, at *13 (C.D. Cal. June 19, 2015) ................ 11

*Hexum v. Eli Lilly & Co.*
  No. 2:13-CV-02701-SVW, 2015 WL 4064633, at *15 (C.D. Cal. June 19, 2015) ................ 11

*Hurley v. Lederle Labs., Div. of Am. Cyanamid Co.*
  651 F.Supp. 993, 1002 (E.D. Tex. 1986) ...................................................................... 11

*In re Fedex Ground Package Sys., Inc., Employment Practices Litig.* (No. II)
  381 F. Supp. 2d 1380, 1381 (J.P.M.L. 2005) ................................................................ 4

*In re Plavix Mktg., Sales Practices & Products Liab. Litig.* (No. II)
  923 F. Supp. 2d 1376, 1378 (J.P.M.L. 2013) ................................................................ 4

*In re: Cook Med., Inc., IVC Filters Mktg., Sales Practices and Prods. Liab. Litig.*
  MDL No. 2570, 53 F.Supp.3d 1379, 2014 WL 5318059 (J.P.M.L. Oct. 15, 2014) ............... 13

*In re: Glaceau VitaminWater Mktg. & Sales Practices Litig.*
  764 F. Supp. 2d 1349, 1350 (J.P.M.L. 2011) ................................................................ 4

*In re: Kauffman Mut. Fund Actions*
  337 F.Supp. 1337, 1339–40 (J.P.M.L.1972)) ............................................................... 11

*In re:  Lipitor II*
  997 F.Supp.2d 1354 (J.P.M.L. 2014) ..................................................... 1, 4, 7, 8, 10

*In re: Maxim Integrated Prods., Inc., Patent Litig.*
  867 F.Supp.2d 1333, 1335 (J.P.M.L.2012) ................................................................. 11

*In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*
  883 F.Supp.2d 1355 (J.P.M.L 2012) .......................................................................... 10

*In re: Seroquel Prods. Liab. Litig.*
  447 F.Supp.2d 1376, 1378 (J.P.M.L.2006) .................................................................. 13

*In Re: Xarelto (Rivaroxaban) Products Liability Litigation*
  65 F.Supp.3d 1402 (J.P.M.L. 2014) ..................................................................... passim

*In re: Zimmer Durom Hip Cup Prods. Liab. Litig.*
  717 F.Supp.2d 1376, 1378 (J.P.M.L.2010) .................................................................. 10

*McDowell v. Eli Lilly & Co.*
  58 F. Supp. 3d 391 (S.D.N.Y. 2014) .......................................................................... 11

*Percival v. Am. Cyanamid Co.*

689 F.Supp. 1060, 1064 (W.D. Okla. 1987) ............................................................................ 11

**Statutes**

21 C.F.R. § 201.57(c)**(6)** ................................................................................................................ 12

28 U.S.C. § 1407 ................................................................................................................ 1, 9, 11

**Other Authorities**

FDA, *Guidance for Industry:  Warnings and Precautions, Contraindications, and Boxed
    Warning Sections of Labeling for Human Prescription Drug and Biological Products—
    Content and Format*, at 6 (Oct. 2011) ........................................................................................ 12

U.S. Food and Drug Admin., Guidance for Industry: Adverse Reactions Section of Labeling for
    Human Prescription Drug and Biological Products–Content and Format (2006) ................... 12

Plaintiffs hereby submit their Reply Brief in Support of Motion Pursuant to 28 U.S.C. § 1407 to Transfer Related Actions for Coordinated Pretrial Proceedings in the Southern District of Indiana.

## I.    INTRODUCTION

Since this Panel's prior December 2014 Order Denying Transfer, the number of federal Cymbalta withdrawal lawsuits has grown to 43, the number of individual plaintiffs in those actions has grown to 249, the number of federal jurisdictions with actions currently pending has grown to 28 so far, the number of plaintiffs' firms has grown to eight, and a Judicial Council Coordinated Proceeding has been established in California involving over 100 state court plaintiffs. Despite these significant changed circumstances, Lilly continues to do everything in its power to scatter the Cymbalta actions to dozens of jurisdictions, overburdening the federal court system and further fragmenting discovery. Lilly's Opposition to the present Motion attempts to further distract this Panel from the straightforward legal question at issue: do these actions involve common questions of fact such that centralization will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation? The answer to this question is yes.

This is the second presentation to this Panel requesting centralized pretrial proceedings. Although, in its prior December 14, 2014 Order, this Panel determined that the pending Cymbalta cases unquestionably share factual issues, it nonetheless denied centralization because 1) the procedural posture of three earlier filed actions varied from the 22 later filed actions, 2) the common discovery had already taken place in those three earlier filed actions, and 3) only two law firms represented the plaintiffs in the actions. Since the December 2014 Order, there have been substantial changes in circumstances that warrant revisiting and now implementing centralization.[1] First, by the time the Panel considers this Motion, all of the earlier filed actions

---

[1] This Panel has recently held that revisiting the issue of centralization is warranted where there has been a substantial change in the scope of litigation involving a drug manufacturer's failure to warn physicians and numerous consumer victims. (See *In re: Lipitor II*, 997 F.Supp.2d 1354 (J.P.M.L. 2014).)

wherein discovery was purportedly complete will have concluded, leaving the remaining actions in similar postures. Second, informal coordination of discovery in the remaining actions has been impossible and discovery is growing more disjointed and fractured. Third, the number of actions, individual plaintiffs, federal jurisdictions with actions currently pending and, plaintiffs' firms have grown, plus a Judicial Council Coordinated Proceeding has been established in California. Thus, the change in circumstances supporting centralization is overwhelming.

Further, since this Panel's prior decision, Lilly has resisted informal coordination at every turn. Lilly first refused to meaningfully cooperate in establishment of an "informal" MDL which the Panel encouraged in December 2014. Then, Lilly engaged in abusive discovery tactics in the various actions which left discovery jumbled. Simply stated, discovery, and the attendant time consuming discovery disputes, have and will continue to create undue burdens on numerous U.S. District Courts. For example, the plaintiffs in the Eastern District of Virginia actions discovered that Lilly unjustifiably withheld production of important documents in the Central District of California actions, which resulted in motion activity in both courts. Much discovery remains to be conducted in Indiana and in the other pending actions, yet Lilly continues to claim that its piecemeal production of discovery in the various actions and limited depositions taken to date should be sufficient to address all discovery in all actions, despite there being no global agreement on discovery coordination in the various actions. Indeed, there has been no discovery related to Lilly's direct-to-consumer and direct-to-physician marketing practices, sales representative discovery, advisory boards, continuing medical education, practice guidelines, WebMD, the design of the Cymbalta pill, pricing, etc. Moreover, there have only been 10 depositions taken of Lilly employees thus far, which is a fraction of the number of depositions normally taken in cases such as these.

Rather than address the straightforward legal question of whether centralization is warranted given the changed circumstances since December of 2014, Lilly continues to resist centralization by misleadingly discussing at length the outcomes of prior Cymbalta actions, the status of prior discovery and law and motion in prior Cymbalta actions, and counsel's alleged

nefarious motive in bringing the present motion (as a means to force settlement), none of which has any bearing on the question before this Panel. Lilly's dizzying discussion of the various Cymbalta actions serves as evidence of the disjointed, fragmented, and jumbled status of the actions that are increasingly burdening the federal court system.

In fact, dozens of federal courts across the country already have pending Cymbalta withdrawal actions. If Lilly has its way, through motions it has filed to sever and transfer to their "home" district courts the bundled cases filed in the Eastern District of California and Southern District of Indiana, the number of federal courts with pending Cymbalta withdrawal actions will expand exponentially. That is, the 249 individual plaintiffs will be severed and transferred to their "home" districts and end up being simultaneously litigated in 119 different federal courts across the country. See Exhibit A, list of Plaintiffs' Home District Courts. This number will only grow as more lawsuits are filed due to impending statutes of limitations. In the Eastern District of California alone, there are 52 different district courts to which the actions are being considered for transfer. Likewise, Lilly has moved to transfer 49 out-of-state plaintiffs who filed in Lilly's home jurisdiction, Indianapolis, to 44 separate jurisdictions. Lilly's argument and evidence demonstrates that a single experienced transferee Judge who can manage this litigation is needed now to relieve the various courts and the parties from the burden of this unwieldy litigation that will only become worse as more actions are filed.

For the reasons set forth above and more fully stated below, Movants respectfully request that the Panel order centralized pretrial proceedings for Cymbalta Withdrawal Injury Actions and transfer all such pending and future actions to the Southern District of Indiana or to such other Court or Judge as the Panel finds appropriate under the circumstances.

///

///

///

///

## II.    ARGUMENT

**A. Lilly's Claim That Centralization Is "Even Less Appropriate Now" Is Without Merit Because Significant Changes In Circumstances Have Occurred Since This Panel Issued Its December 10, 2014 Order Denying Transfer.**

In its December 10, 2014 Order, this Panel held that, unquestionably, the Cymbalta litigation actions share factual issues.  However, the Panel nonetheless denied transfer because 1) the procedural posture of three earlier filed actions varied from the 22 later filed actions, 2) the common discovery had already taken place in those three earlier filed actions, and 3) only two law firms represented the plaintiffs in the actions.  As was discussed in plaintiffs' moving papers, the Panel may revisit a denied MDL petition as the litigation expands and where a significant change in circumstances has occurred.  (*See, e.g., In re Plavix Mktg., Sales Practices & Products Liab. Litig.* (No. II), 923 F. Supp. 2d 1376, 1378 (J.P.M.L. 2013); *In re: Glaceau VitaminWater Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1349, 1350 (J.P.M.L. 2011); *In re Fedex Ground Package Sys., Inc., Employment Practices Litig.* (No. II), 381 F. Supp. 2d 1380, 1381 (J.P.M.L. 2005); *In re: Lipitor II*, 997 F. Supp. 2d at 1356; *In re Plavix II*, 923 F. Supp. 2d at 1378.)  Here, there has been an expansion of the litigation and significant changes in circumstances because 1) all of the earlier filed actions have concluded or will have concluded by the time of the JPML hearing, 2) informal coordination of discovery in the remaining actions has been impossible and discovery is growing more and more muddled, and 3) the number of plaintiffs' law firms has grown from two to eight and the number of actions has grown from 28 to 43 (involving 249 individual plaintiffs).

**a. The Procedural Posture Of The Actions Is No Longer Varied Because By The Time this Panel Hears This Petition, All Of The Earlier Filed Actions Will Have Been Completed.**

In its December 10, 2014 Order, this Panel denied transfer in part because three of the earliest filed actions were in a different procedural posture from the other 22  more recently filed actions.  Now, the two earliest filed actions which were pending in the Central District of California, and which had been in advanced stages of litigation, have been tried.  Also, by the

4

time the Panel hears this motion, two more trials in Virginia will have concluded pursuant to that Court's "rocket docket." Except for a single action in a slightly different discovery posture in Arizona (in which discovery is currently set to close at the end of this year), and which can be excluded from the MDL if necessary, all actions referenced in this Motion are just beginning discovery. Even the Arizona action, however, would benefit from being transferred to an MDL, so that the additional discovery needed in that action can be completed in a coordinated manner.

Plaintiffs have repeatedly tried to informally coordinate the timing of discovery and other related matters in the various actions because all of the actions referenced in this Motion are now in the same beginning stages of discovery. Plaintiffs, however, have met with no success. Moreover, the actions have invariably ended up on different tracks set by the various judges, making informal coordination very difficult. Adding to this difficulty, Lilly has been unwilling to agree to a single discovery track for actions in different federal courts, instead demanding that it be given priority to conduct plaintiff-specific discovery in every action. Moreover, early in the litigation, Lilly refused plaintiffs' offer to toll statutes of limitation, a common sense approach in the face of the Panel suggestion in December 2014 that agreement be reached for an "informal coordination." As a result, plaintiffs' counsel was forced to file actions for over 250 clients whose statutes of limitations were approaching. Absent granting of this Motion and assignment of a single Judge with authority to oversee these issues, numerous further filings will continue given that the dockets of plaintiffs' law firms presently total more than 5,000 clients. In an effort to address Lilly's continued refusal to agree to a meaningful informal coordination proceeding, plaintiffs have been filing their actions in the United States District Court for the Southern District of Indiana given that the District is near Lilly's jurisdictional and operational home office. Unfortunately, the end result is that the Southern District of Indiana will potentially be overloaded without the benefit of having been assigned an MDL.

In a continued attempt to further fracture this litigation, Lilly's latest effort is to move to sever the actions and transfer them to each plaintiff's home state. If the Indiana court grants Lilly's pending motions to sever and transfer, by the time all of the cases are filed, there will be

several thousand actions scattered across the country. No decision on those motions has been rendered to date, but if granted, the result would be numerous additional separate District Courts where Cymbalta withdrawal actions are filed and prosecuted. In an effort to avoid this burdensome outcome and reduce inconsistent litigation, plaintiffs have asked Lilly to join plaintiffs in asking the Court to defer both the Motion to Sever and the associated status conference until after the hearing on the present Motion. As of the time of the filing of the present motion, Lilly has not responded to plaintiffs' request.

**b. Informal Coordination Of Common Discovery In The Remaining Actions Has Been Difficult And Is Growing More And More Disjointed And Fractured.**

In its December 10, 2014 Order, this Panel denied transfer in part because most, if not all, of the common discovery in the three earlier filed actions had taken place. All of those actions have resolved by the time of the hearing. Further, Lilly has resisted informal coordination of common discovery in the remaining actions and discovery in those actions is growing more and more muddled. Additionally, despite the fact that no party is bound by prior discovery in other actions, prior discovery is being nonetheless dumped on newer plaintiffs who are effectively being told that the answers to their discovery are contained in the voluminous three million page document dump. These are only some of the problems with the federal cases. Certainly discovery involving the California Judicial Council Coordinated Proceeding and some Kentucky state court cases will also have to be coordinated with the federal actions. Given informal coordination has been difficult and unsuccessful to date, it is hard to imagine how informal coordination will be possible in the future as the litigation grows and becomes more and more procedurally complex. Indeed, discovery will likely only become increasingly unwieldy and inconsistent.

Further, since this Panel's prior decision, Lilly has resisted informal coordination at every turn. As indicated above, Lilly first refused to meaningfully cooperate in establishment of an "informal" MDL which the Panel encouraged in December 2014. Then, Lilly engaged in

abusive discovery tactics in the various actions which left discovery jumbled. Simply stated, discovery, and the attendant time consuming discovery disputes, have and will continue to create undue burdens on numerous U.S. District Courts. For example, the plaintiffs in the Eastern District of Virginia actions discovered that Lilly unjustifiably withheld production of important documents in the Central District of California actions, which resulted in motion activity in both courts. Much discovery remains to be conducted in Indiana and in the other pending actions, yet Lilly continues to claim that its piecemeal production of discovery in the various actions and limited depositions taken to date should be sufficient to address all discovery in all actions despite there being no global agreement on discovery coordination in the various actions. Indeed, there has been no discovery related to Lilly's direct-to-consumer and direct-to-physician marketing practices, sales representative discovery, advisory boards, continuing medical education, practice guidelines, WebMD, the design of the Cymbalta pill, pricing, etc. Moreover, there have only been 10 depositions taken of Lilly employees thus far, which is a fraction of the number of depositions normally taken in cases such as these.

> **c. The Number Of Federal Actions Has Grown to 43, The Number Of Individual Plaintiffs Has Grown To 249, The Number Of Federal Jurisdictions With Actions Pending Has Grown To 28, The Number Of Plaintiffs' Firms Has Grown To Eight, And A Judicial Council Coordinated Proceeding Involving Over 100 State Court Plaintiffs Has Been Established In California.**

In two recent cases, this Panel has held that a growth in litigation involving tens of actions and additional tag along actions warrants centralization. (See *In re: Lipitor II*, 997 F.Supp.2d 1354 (J.P.M.L. 2014; *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, 65 F.Supp.3d 1402 (J.P.M.L. 2014).) In the Lipitor litigation, the Panel found that revisiting a denied MDL petition was warranted and centralization appropriate where the number of involved actions had grown; the number of involved plaintiffs' firms had grown; and related state court litigation had commenced. (See *In re: Lipitor II*, 997 F. Supp. 2d at 1356.) There, centralization was appropriate where the litigation had grown to 56 actions and over 170 tag-along actions. (*Ibid.*) Similarly, in the Xarelto litigation, this Panel held that centralization was necessary

where the litigation involved 21 actions and more than 30 tag-along actions.  (*See In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, 65 F.Supp.3d 1402 (J.P.M.L. 2014).)

The present action is directly analogous to *Lipitor* and *Xarelto*.  Here, the number of involved actions has grown significantly from 28 federal actions involving 39 plaintiffs to 43 federal actions involving 249 plaintiffs; the number of federal jurisdictions with actions currently pending has grown to 28, the number of plaintiffs' firms has grown significantly from two to eight; and, since the prior Motion, a Judicial Council Coordinated Proceeding has been established in California involving well over 100 additional state court plaintiffs.  Thus, like *Lipitor*, revisiting the denied MDL is warranted and centralization is now appropriate given the significant change in circumstances.  Moreover, like both *Lipitor* and *Xarelto*, because the Cymbalta litigation now involves 43 federal actions and likely hundreds of tag-along actions, centralization is now necessary to serve the convenience of the parties and witnesses, and to promote the just and efficient conduct of the litigation.

In their Opposition to the present motion, Lilly argues that centralization is "even less appropriate now than it would have been eight months ago."  (See Opp., p. 11.)  In support of this erroneous argument, Lilly provides a dizzying recitation of various discovery efforts and law and motion addressing those efforts in various uncoordinated actions.  Lilly's recitation is direct evidence that discovery in these uncoordinated actions is a jumbled mess.  If nothing else, this evidence demonstrates that a single experienced transferee judge who can manage this litigation is needed now to relieve the various courts and the parties from the burden of this disjointed litigation that will only become worse as more actions are filed.   According to counsel who participated in the individual federal court actions, Lilly produced approximately 116,000 documents consisting of a little over three million pages in the previously filed individual federal court Cymbalta withdrawal actions.  (*Carnes v. Eli Lilly and Company,* Action No. CA 0:13-591-CMC, 2013 WL 6622915 (D.S.C. Dec. 16, 2013) and *Herrera, Hexum, Ali* and *Hagan-Brown*).  Lilly's "rolling" and piecemeal document productions contained voluminous unexplained redactions as well as documents purportedly withheld for privilege.  Lilly also failed

to produce a timely privilege log.  When pressed, Lilly finally produced a privilege log and, in April 2015, produced hundreds of documents previously withheld for privilege or that were otherwise redacted for unexplained reasons.

Due to such late productions, deponents were not questioned about highly relevant documents.  Lilly also failed to identify or misidentified which documents were responsive to specific requests making it difficult if not impossible to navigate the productions.  Due to Lilly's document production tactics, the plaintiffs in *Herrera*, *Hexum*, *Ali* and *Hagan-Brown* were forced to depose 10 Lilly employees prior to production of documents highly relevant to their testimony.  Such abusive tactics are hardly evidence of "cooperative discovery efforts by Lilly." (See Opp. p. 11.)

Further, none of the discovery conducted to date has been the subject of a protocol for the discovery and production of electronically stored information, there has been no agreement in the individual federal court actions upon a search methodology, and no agreement as to the relevant custodial and non-custodial sources of information.  All that has occurred are disordered document productions with periodic dumps of documents at the point that individual actions were at their respective closes of discovery or even after close of discovery, many depositions that have been taken without the benefit of relevant documents, and a significant withholding of documents on the basis of ill-defined or non-existent privilege.  Absent an MDL and a global process for the coordination of discovery, significant documents are likely to be missed or withheld from production.  Indeed, it appears that Lilly's dilatory discovery tactics may have materially impacted the earlier scheduled cases.  Without coordination, there likely will be inconsistent decisions on discovery issues, substantive issues at summary judgment, and on the admissibility of both fact and expert evidence at summary judgment, resulting in significant prejudice to individual plaintiffs from such inconsistent decisions.

//

//

//

**B. Lilly's Claim That Centralization Would Not Further The Goals Of 28 U.S.C. § 1407 Is Without Merit Because The Panel Has Held That Centralization Is Necessary For Litigation Involving A Drug Manufacturer's Failure To Warn Physicians And Numerous Consumer Victims.**

In its Opposition, Lilly makes several arguments that have already been considered by this Panel in the context of the Xarelto litigation. (*See In Re: Xarelto (Rivaroxaban) Products Liability Litigation*, 65 F.Supp.3d 1402 (J.P.M.L. 2014).) In *Xarelto*, plaintiffs in six products liability actions moved to centralize for pretrial proceedings 21 actions and more than 30 tag-along actions, pending in 22 districts, alleging that plaintiffs who used the defendants' medication suffered severe bleeding or other injuries and that defendants did not adequately warn prescribing physicians or consumers of the risks associated with the drug. (*Id*. at 1403.) In opposing centralization, the *Xarelto* defendants argued that (1) individualized facts concerning each plaintiff's action, such as medical history, dosage, and alleged injuries, would predominate over common factual issues; (2) informal coordination would be sufficient to address overlapping discovery on the common issues alleged; (3) the circumstances suggested the actions lacked merit; and (4) creation of an MDL would encourage the filing of a flood of complaints that may lack merit. (*Id*. at 1404.) In the present action, Lilly has also made all four of these arguments. As such, the Panel's analysis in *Xarelto* is instructive here.

First, like the defendants in *Xarelto*, Lilly argues that the outcomes of the Cymbalta actions ultimately turn on "case-specific facts involving individual Plaintiffs and individual prescribers." (See Opp. p. 16.) However, in *Xarelto*, the Panel held that questions of causation that are plaintiff-specific are not an impediment to centralization where common questions of the adequacy of the drug manufacturer's warning predominate. (*Xarelto*, *supra*, 65 F.Supp.3d at 1404; citing *In re: Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F.Supp.2d 1376, 1378 (J.P.M.L.2010); *In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F.Supp.2d 1355 (J.P.M.L 2012).) Here, like in *Xarelto*, the existence of individual questions of causation specific to each victim are not reason to deny centralization where the common questions regarding the adequacy of Lilly's label are centrally at issue.

Second, Lilly argues that informal coordination should be "easy." (See Opp. p. 15.) All evidence is to the contrary. In *Xarelto*, the Panel held that 21 actions and over 30 potential tag-along actions pending in 22 districts was sufficient to make effective informal coordination of discovery and other pretrial matters unlikely. (*Xarelto*, *supra*, 65 F.Supp.3d at 1404, citing *In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.* (No. II), 997 F.Supp.2d 1354, 1356 (J.P.M.L.2014) ("the increased presence of apparently unique counsel, coupled with the increased number of involved actions, districts, and judges, makes it highly difficult, if not impossible, to coordinate this litigation effectively on an informal basis"). Like *Xarelto*, the present litigation involves 43 actions pending in 28 federal districts and potentially hundreds, if not thousands, of tag-along actions. It is difficult to understand how Lilly can make any colorable argument that the present litigation is not ripe for centralization like *Xarelto*.

Third, in its Opposition, Lilly spends a great deal arguing about the merits of the Cymbalta litigation. (See, e.g., Opp. pp. 5-7.) In *Xarelto*, the Panel held that such an assessment of the merits of the actions is beyond the Panel's authority. (*Xarelto*, *supra*, 65 F.Supp.3d at 1404; citing *In re: Maxim Integrated Prods., Inc., Patent Litig.*, 867 F.Supp.2d 1333, 1335 (J.P.M.L.2012) ("'[t]he framers of Section 1407 did not contemplate that the Panel would decide the merits of the actions before it and neither the statute nor the implementing Rules of the Panel are drafted to allow for such determinations'") (quoting *In re: Kauffman Mut. Fund Actions*, 337 F.Supp. 1337, 1339–40 (J.P.M.L.1972)).) While Lilly's arguments on the merits are beyond the Panel's authority, plaintiffs would like to briefly respond to Lilly's merits arguments. In this context, Lilly points to the district court's decision in *McDowell v. Eli Lilly & Co.*, 58 F. Supp. 3d 391 (S.D.N.Y. 2014), where a court held that, under New York law, the Cymbalta label was not misleading as a matter of law. Importantly, the decision was rendered before any meaningful discovery had been allowed. The *McDowell* court specifically disallowed any "general cause" discovery until *after* Lilly had an opportunity to seek summary judgment on the adequacy of the label. In two recent decisions denying summary judgment in Cymbalta withdrawal cases, the court specifically distinguished *McDowell* "in light of the newly uncovered evidence" procured

through discovery. *Herrera v. Eli Lilly & Co.*, No. 2:13-CV-02702-SVW, 2015 WL 4064639, at *13 (C.D. Cal. June 19, 2015); *Hexum v. Eli Lilly & Co.*, No. 2:13-CV-02701-SVW, 2015 WL 4064633, at *15 (C.D. Cal. June 19, 2015).[2]

To be clear, these cases are *not* about whether Lilly made *any* warning about Cymbalta withdrawal. These cases are about whether Lilly made an *adequate* warning. Here, there is considerable evidence that the Cymbalta label is materially deficient and misleading regarding the risks associated with Cymbalta withdrawal. As set forth more fully in plaintiffs' opening brief, the Cymbalta label is written in a way that suggests the risks are rare or uncommon, even though Lilly's own data indicates that withdrawal is very common.

---

[2] In addition, the court in *McDowell* proclaimed that "courts have refused to graft onto the adequacy standard a requirement that a package insert must include specific adverse event frequencies." 58 F. Supp. 3d at 405. In making this proclamation, the court cited two 30-year old decisions: *Hurley v. Lederle Labs., Div. of Am. Cyanamid Co.,* 651 F.Supp. 993, 1002 (E.D. Tex. 1986) and *Percival v. Am. Cyanamid Co.,* 689 F.Supp. 1060, 1064 (W.D. Okla. 1987). The first decision, *Hurley*, was specifically reversed on appeal to the Fifth Circuit. *See Hurley v. Lederle Labs. Div. of Am. Cyanamid Co.*, 863 F.2d 1173, 1180 (5th Cir. 1988). It is bad law. The second decision, *Percival*, relied exclusively on *Hurley* analysis quoting nearly the entire decision verbatim. *See Percival*, 689 F. Supp. at 1064. It is, thus, also bad law. The McDowell court also noted, twice, that Lilly's use of the 1% language "is consistent with the accepted practice of identifying such individual adverse events observed at or above a specified threshold and in accord with FDA regulations and guidance[.]" *McDowell*, 58 F. Supp. 3d at 404, 406 (citing 21 C.F.R. § 201.57(c)(7) and U.S. Food and Drug Admin., Guidance for Industry: Adverse Reactions Section of Labeling for Human Prescription Drug and Biological Products–Content and Format (2006). The court, however, relies on the *wrong* regulation and guidance document. The discontinuation warning in the Cymbalta label falls under the "Warnings and Precautions" section of the label, which is governed by 21 C.F.R. § 201.57(c)**(6)**, not § 201.57(c)**(7)**. The FDA's guidance for the "Warnings and Precautions" section, i.e., the section where the discontinuation warning is displayed, does not specify the use of a frequency threshold, but instead states that if known, this section should include "[a] numerical estimate of risk or adverse reaction rate[.]" FDA, *Guidance for Industry: Warnings and Precautions, Contraindications, and Boxed Warning Sections of Labeling for Human Prescription Drug and Biological Products—Content and Format*, at 6 (Oct. 2011). By relying heavily on the *wrong* regulation and *wrong* guidance document, the McDowell court incorrectly concluded that use of the 1% threshold language was the "standard methodology" and "accepted practice" for disclosing risk information within the "Warnings and Precautions" section of the label. This fundamental misconception led the court to conclude, again without proper legal foundation, that the Cymbalta label was adequate.

Finally, like *Xarelto*, Lilly argues that plaintiffs "seek to warehouse their lawsuits before a single court – in which they would bury meritless claims beneath a shield…" (See Opp. p. 17.) While plaintiffs object to Lilly's unfounded characterization, in *Xarelto* the Panel was not persuaded by the argument that an MDL would generate the filing of voluminous claims without due diligence by plaintiffs' counsel. (*Xarelto*, *supra*, 65 F.Supp.3d at 1405.) The Panel noted that it often has observed that "[t]he response to such concerns more properly inheres in assigning all related actions to one judge committed to disposing of spurious claims quickly." (*Ibid.*, citing *In re: Seroquel Prods. Liab. Litig.*, 447 F.Supp.2d 1376, 1378 (J.P.M.L.2006).) The Panel also noted that *in In re: Cook Med., Inc., IVC Filters Mktg., Sales Practices and Prods. Liab. Litig.*, MDL No. 2570, 53 F.Supp.3d 1379, 2014 WL 5318059 (J.P.M.L. Oct. 15, 2014), it explained that alleged problems like these can be managed efficiently within the MDL:

> [T]he transferee court handling several actions in an MDL likely is in a better position—and certainly is in no worse position than courts in multiple districts handling individual actions—to properly address meritless claims. There are many tools a transferee court may use to accomplish this task. And importantly, if defendants believe plaintiffs' counsel are filing frivolous claims, it is incumbent upon defense counsel to bring that concern to the attention of the transferee court, and to propose a process to identify and resolve such claims. (See *Id*. at *2.)

As in *Xarelto*, the Panel here should likewise not be persuaded by Lilly's claims that meritless claims will be buried by centralization. Instead, this Panel should hold that a MDL and a single judge will be in a better position to understand the substantive nuances of the litigation and address meritless claims.

### III.    CONCLUSION

Based on the foregoing, Movants respectfully request that the Panel order centralized pretrial proceedings for Cymbalta withdrawal injury actions and transfer all such pending and future actions to the Southern District of Indiana or to such other Court or Judge as the Panel finds appropriate under the circumstances.

//

//

//

DATED: August 21, 2015
Oakland, California

KNOX RICKSEN LLP

 /s/ Steven B. Stein
Steven B. Stein, Esq.
CA Bar No. 52829
sbs@knoxricksen.com
One Kaiser Plaza, Suite 1101
Oakland, CA 94612-3601
Tel:  (510) 285-2500
Fax:  (510)285-2505

*Attorney for Plaintiffs:*
*Christina Courtney*
*Debbie Head*
*Joinne Jones*
*Teresa Simmons*
*Deona Mae Slabaugh*
*Ashley Ruchelle Valentine*
*Yvette Beard*
*Terry Brown*
*Theresa Carr*
*Linda Coles*
*Donna Colgan*
*Maria Deville*
*Billy George Duggar*
*Frances Bernadette Forrester*
*Richard Joseph Kaschak*
*Billie Jane Lee*
*Essie Antonio Mitchell*
*Damien Moore*
*Tina Marie Robinson*
*Amy Thomas*
*Joyce White*
*Michael Worl*
*Tina Forbes*
*Teresa Kelly*
*Neil Schaffer*
*Elaine Scherer*
*Judy Brant*
*Maria Antoinette Collier*
*Doris Porter Edwards*
*David Scott Foster*
*Jose Ruben Galvan*

*Angela Haley*
*William Earl Holly*
*Lewis Bryant Horne*
*Carolyn Humphrey*
*Justin Collier Hunt*
*Karen Judge*
*Richard Lee Lynch, Jr.*
*Gene David McKenzie*
*Kathleen Clare Miles*
*Myrna Nolan*
*Jacqueline Fredia Osborne*
*Gale Marie Pettis*
*Wendy Prescott*
*Viola Lynn Spurlock*
*Jack Wolfe*
*William Foster Young*
*Brittany Nickole Zabriskie*
*Carolyn Desharnais*
*Elizabeth Rushworth*
*Lease Skaggs*
*Mavis Renee Harper*